**REESE BROTHERS, INC.**

v.

**UNITED STATES of America,
Appellant.**

No. 05–2135.

United States Court of Appeals,
Third Circuit.

Argued Jan. 27, 2006.

Decided May 9, 2006.

230

Stanley M. Stein, Feldstein, Grinberg, Stein & McKee, Pittsburgh, Pennsylvania, Stephen J. Rosen, Henry D. Levine (Ar-gued), Levine, Blaszak, Block & Boothby, Washington, DC, for Appellee.

Robert W. Metzler, Teresa E. McLaughlin (Argued), United States Department of Justice, Tax Division, Washington, DC, for Appellant.

Before: RENDELL and SMITH, Circuit Judges, and IRENAS, District Judge.*

## OPINION OF THE COURT

SMITH, Circuit Judge.

The question presented in this appeal is whether the federal communications excise tax set forth in 26 U.S.C. § 4251(a)(1) applies to long-distance telephone services that are priced based on a fixed per-minute, non-distance-sensitive rate. Based upon the plain language and structure of the statute, we conclude that it does not. The District Court granted summary judgment in favor of the taxpayer. We affirm.

## I. Factual and Procedural Background

Taxpayer Reese Brothers, Inc. ("Reese Brothers") purchased intrastate, interstate, and international long-distance telephone services ("Reese Services") from LCI, Qwest, and MCI (collectively "Carriers") from the third quarter of 1998 through the first quarter of 2002. These Carriers charged Reese Brothers a fixed-per minute rate for in-state long-distance calls and different fixed-per minute rates for out-of-state and international long distance calls. The Carriers collected a three-percent federal communications excise tax from Reese Brothers and remitted it to the Internal Revenue Service ("IRS").

* The Honorable Joseph E. Irenas, Senior District Judge for the District of New Jersey, sitting by designation.

On November 21, 2001, Reese Brothers filed a claim with the IRS, seeking a refund of $319,496.33 for the excise taxes that the Carriers collected and remitted between July 1, 1998 and June 30, 2001; it filed a second claim for a refund of $26,048.38 on August 2, 2002 for taxes collected for July 1, 2001 and March 31, 2002. Although the IRS apparently received these claims, it did not respond to them, and Reese Brothers filed suit in federal court on May 22, 2003. Reese Brothers subsequently moved for partial summary judgment on the issue of liability and the Government filed a cross-motion for summary judgment.

Reese Brothers argued that, pursuant to 26 U.S.C. § 4252(b)(1)-which defines "toll telephone services" as services "for which there is a toll charge that varies in amount with the distance and elapsed transmission time of each individual communication"-the federal communications excise tax applied only to long-distance services for which the charges vary by *both* distance *and* elapsed time. Because the charges for its long-distance services were based on a fixed per-minute rate, unrelated to distance, Reese Brothers claimed that the tax is inapplicable to the services provided by the Carriers.

The Government, by contrast, argued that the tax applies to charges that are based on either the distance or the elapsed time or both, and therefore, claimed that the Reese Services are taxable. The Government also offered two alternative bases for imposing the excise tax on the Reese Services. First, the Government suggested that if the Reese Services are not taxable under § 4252(b)(1), they should be considered "toll telephone services" under § 4252(b)(2), which defines such services as those "which entitle[ ] the subscriber, upon payment of a periodic charge (determined as a flat amount or upon the basis

of total elapsed transmission time), to the privilege of an unlimited number" of calls to or from an area outside of the local service area. Second, it argued that in the event the Reese Services are not "toll telephone services" under any definition, they constitute "local telephone services" under § 4252(a).

Adopting the Report and Recommendation of a Magistrate Judge, the District Court granted Reese Brothers' motion with respect to liability and denied the Government's cross-motion. The parties agreed to the amount of overpayment and the District Court entered judgment on behalf of Reese Brothers in the amount of $335,213.96. The Government now appeals.

## II. Jurisdiction and Standard of Review

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 and its review of a district court's order granting summary judgment is plenary. *Camiolo v. State Farm Fire & Cas. Co.*, 334 F.3d 345, 354 (3d Cir.2003). We apply the standard set forth in Federal Rule of Civil Procedure 56(c) and therefore may affirm the district court's order if, when viewing the evidence in the light most favorable to the non-moving party, there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Questions of statutory interpretation are subject to *de novo* review. *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 (3d Cir.2003) (citation omitted).

## III. Sections 4251 and 4252 of the Internal Revenue Code

Section 4251(a)(1) of the Internal Revenue Code provides for a tax on "communications services." As defined by the Code, "communications services" include

"local telephone service," "toll telephone service," and "teletypewriter exchange service." 26 U.S.C. § 4251(b)(1). Section 4252 defines these three services. In relevant part, that section states:

(a) Local telephone service. For purposes of this subchapter, the term "local telephone service" means—

(1) the access to a local telephone system, and the privilege of telephonic quality communication with substantially all persons having telephone or radio telephone stations constituting part of such local telephone system, and

(2) any facility or service provided in connection with a service described in paragraph (1).

The term "local telephone service" does not include any service which is a "toll telephone service" or a "private communications service" as defined in subsections (b) and (d).

(b) Toll telephone service. For purposes of this subchapter, the term "toll telephone service" means—

(1) a telephonic quality communication for which (A) there is a toll charge which varies in amount with the distance and elapsed transmission time of each individual communication and (B) the charge is paid within the United States, and

(2) a service which entitles the subscriber, upon payment of a periodic charge (determined as a flat amount or upon the basis of total elapsed transmission time), to the privilege of an unlimited number of telephonic communications to or from all or a substantial portion of the persons having telephone or radio telephone stations in a specified area which is outside the local telephone system area in which the station provided with this service is located.

(c) Teletypewriter exchange service.- For purposes of this subchapter, the term "teletypewriter exchange service" means the access from a teletypewriter or other data station to the teletypewriter exchange system of which such station is a part, and the privilege of intercommunication by such station with substantially all persons having teletypewriter or other data stations constituting a part of the same teletypewriter exchange system, to which the subscriber is entitled upon payment of a charge or charges (whether such charge or charges are determined as a flat periodic amount, on the basis of distance and elapsed transmission time, or in some other manner). The term "teletypewriter exchange service" does not include any service which is "local telephone service" as defined in subsection (a).

The District Court concluded that the Reese Services did not fall within any of the definitions set forth in § 4252. We agree.

The current definitions of "local telephone service," "toll telephone service," and "teletypewriter exchange service" were enacted by Congress in 1965 as part of the Excise Tax Reduction Act, which, among other things, reduced the telephone tax from ten percent to three percent. *See* Excise Tax Reduction Act of 1965, Pub.L. 89–44, 79 Stat. 136, 146 (1965). At that time, American Telephone and Telegraph Corporation (AT & T) had a monopoly on long-distance services in the United States. *See* Pearce Decl., App. at 156, ¶¶ 23, 25. It offered two types of long-distance-Message Telephone Service (MTS) and Wide Area Telephone Service (WATS)-as well as local and private line services. *Id.* at ¶¶ 17, 24, 26. MTS charges were based on the duration of the call, the distance that the call traveled, the time of day, and the day of the week. *Id.* at ¶ 17. The distance portion of the rate was determined by reference to "mileage bands," of which

there were thirty.[1] *Id.* Charges for WATS-a service which used a dedicated access line (for example, 800 numbers)-were based on a flat rate for unlimited calls. *Id.* The 1965 definition of "toll telephone service" in § 4252 replaced an earlier version which defined "toll telephone service" as a service "for which ... there is a toll charge," and appears to reflect an effort by Congress to conform the definition to the long-distance pricing methods then in place. *Compare* Excise Tax Reduction Act of 1965, Pub.L. 89–44, 79 Stat. 136, 146 (1965), *with* Excise Tax Technical Changes Act of 1958, Pub.L. 85–859, 72 Stat. 1275, 1290 (1958).

Since then, however, AT & T has lost its monopoly status and long-distance billing methods have changed. Pearce Decl., App. at 159–162, ¶¶ 29–35. As a general rule, charges for long-distance telephone calls now are based only on the duration of the call, though there remain some intrastate long-distance services which are priced based on distance as well as time. *Id.*

On appeal, the Government offers three arguments which, if accepted, would warrant reversal of the District Court. The Government's first and primary contention is that the Reese Services are taxable under 26 U.S.C. § 4252(b)(1) as "toll telephone services." In the alternative, the Government argues that if the Reese Ser-vices are not taxable under § 4252(b)(1), they should be considered "toll telephone services" under § 4252(b)(2) or "local telephone services" under § 4252(a).

Recently, four other courts of appeals-the Second, Sixth, Eleventh, and District of Columbia circuits-have considered the meaning of § 4252(b)(1). In each case, the court has rejected the same arguments that the Government advances in this case. *Fortis, Inc. v. United States,* No. 05–cv–2518, 2006 U.S.App. 10749, 2006 WL 1140124, 447 F.3d 190 (2d Cir. April 27, 2006) (per curiam); *OfficeMax, Inc. v. United States,* 428 F.3d 583 (6th Cir.2005), *r'hrg en banc denied,* No. 04–4009, 2006 U.S.App. LEXIS 8294 (6th Cir. March 30, 2006); *Am. Bankers Ins. Group v. United States,* 408 F.3d 1328 (11th Cir.2005); *Nat'l R.R. Passenger Corp. (Amtrak) v. United States,* 431 F.3d 374 (D.C.Cir. 2005).[2] We agree with the decisions reached by our sister circuits and will join them in ruling in favor of the taxpayer.

## A. "Toll Telephone Services" Under Section 4252(b)(1)

"Toll telephone services" are defined in § 4252(b)(1) as services "for which there is a toll charge that varies in amount with the distance *and* elapsed transmission time of each individual communication." 26 U.S.C. § 4252(b)(1) (emphasis added). The Government urges us to conclude that

---

1. The number of bands was subsequently reduced to eleven before the mileage band system was ultimately abandoned.

2. Every district court that has considered the issue-except one which was subsequently reversed-has held that § 4252(b)(1) is inapplicable where the charges for long-distance services do not vary by distance. *See Hewlett–Packard Co. v. United States,* 2005 WL 1865419, 2005 U.S. Dist. LEXIS 19972 (N.D.Cal. Aug. 5, 2005); *Fortis, Inc. v. United States,* 420 F.Supp.2d 166 (S.D.N.Y.2004), *aff'd* No. 05–cv–2518, 2006 U.S.App. 10749, 2006 WL 1140124, 447 F.3d 190 (2d Cir. April 27, 2006) (per curiam); *Am. Online, Inc. v. United States,* 64 Fed.Cl. 571, 576–81 (Fed. Cl.2005); *Honeywell Int'l, Inc. v. United States,* 64 Fed.Cl. 188, 198–203 (Fed.Cl.2005); *Nat'l R.R. Passenger Corp. v. United States,* 338 F.Supp.2d 22 (D.D.C.2004), *aff'd,* 431 F.3d 374 (D.C.Cir.2005); *Office Max, Inc. v. United States,* 309 F.Supp.2d 984 (N.D.Ohio 2004), *aff'd,* 428 F.3d 583 (6th Cir.2005); *but cf. Am. Bankers Ins. Group v. United States,* 308 F.Supp.2d 1360 (S.D.Fla.2004), *rev'd,* 408 F.3d 1328 (11th Cir.2005).

the phrase "varies with distance and elapsed time" is ambiguous and, based on the statute's structure, purpose, and legislative history, encompasses the Reese Services. Second, it argues that IRS Revenue Ruling 79–404, 1979 WL 51192, which construed similar non-distance-sensitive ship-to-shore communications as taxable "toll telephone services" under § 4252(b)(1), is entitled to deference under *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), and *United States v. Mead Corp.*, 533 U.S. 218, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001). Third, even if the Ruling was not originally entitled to deference, the Government argues that because Congress reenacted § 4252(b)(1) after Revenue Ruling 79–404 was issued, it now has the force of law under the legislative reenactment doctrine. Finally, the Government suggests that even if the District Court properly concluded that charges must be based on distance as well as elapsed time, distance was a factor in calculating the charges for the Reese Services to the extent that the per-minute rate varied depending on whether the call was intrastate, interstate, or international.

**1. The Meaning of the Word "And"**

█ Our role in interpreting a statute is to give effect to Congress' intent. *Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir.2001) (citations omitted). Because we presume that Congress' intent is most clearly expressed in the text of the statute, we begin our analysis with an examination of the plain language of the relevant provision. *Id.* Section 4252(b)(1) provides that toll telephone services are those for which the amount varies by "distance *and* time." The Government contends-and we agree-that the word "and" can be either conjunctive or disjunctive. *See, e.g., Slodov v. United States*, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978) (concluding that the word "and" was used disjunctively in 26

U.S.C. § 6672 which imposed a tax penalty on "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title"); *Peacock v. Lubbock Compress Co.*, 252 F.2d 892 (5th Cir. 1958), *cert. denied*, 356 U.S. 973, 78 S.Ct. 1136, 2 L.Ed.2d 1147 (1958) (holding that "and" was disjunctive in the context of a statute that required an employer to pay overtime wages to employees "engaged in the ginning and compressing of cotton"). In fact, the word "and" is used to mean "or" within § 4252 itself. As the Sixth Circuit explained:

Section 4252(b)(1) requires that the toll charge vary in amount with distance and elapsed time of each individual communication "and" that the charge be paid within the United States. Both sides of this "and"... must be satisfied for the telephone service to be taxable.... At times, however, Congress used the word differently. Take 4251: it defines "communications services" as "local telephone service, toll telephone service, *and* teletypewriter exchange service." No one doubts the disjunctive (or cumulative) nature of this usage because these definitions of the services in 4252 are generally mutually exclusive and because no service exists that can satisfy all three definitions at once. Section 4252 likewise uses "and" to connect a list of alternative definitions found in 4252(b)(1) and (b)(2). Here, too, no one contests that a "toll charge which varies in amount with the distance and elapsed transmission time of each individual communication,"... cannot simultaneously be a "periodic charge (determined as a flat amount or upon the basis of total elapsed transmission time) [for] the privilege of an unlimited number of telephonic communications."

*OfficeMax*, 428 F.3d at 588.

█ The usual meaning of the word "and," however, is conjunctive, and "unless

the context dictates otherwise, the 'and' is presumed to be used in its ordinary sense...." *Am. Bankers*, 408 F.3d at 1332; *see also OfficeMax*, 428 F.3d at 588 (citing in part *Crooks v. Harrelson*, 282 U.S. 55, 58, 51 S.Ct. 49, 75 L.Ed. 156 (1930); Webster's Third New International Dictionary 80 (2d ed.2002); 1A Norman J. Singer, Statutes and Statutory Construction 21.14, at 179–80 (6th ed.2002)). The Government argues that applying the ordinary definition of the word "and" would not make sense because "Congress could not possibly have meant to allow telephone companies to opt their customers out of the tax through nothing more than a change in billing methods." Appellant's Br. at 12, 32. Applying the ordinary definition of the word "and" in § 4252(b)(1), however, does not lead to an anomalous or absurd result. In fact, such a reading is entirely consistent with AT & T's billing practices in 1965 when Congress adopted the definition.[3]

The Supreme Court addressed and rejected an analogous argument in *Iselin v. United States*, 270 U.S. 245, 46 S.Ct. 248, 70 L.Ed. 566 (1926). At issue in that case was a Revenue Act provision which imposed a tax on the sale of theater tickets sold at places other than a ticket box office. The amount of the tax was based on the difference between the "established price" at the ticket office and the actual sale price. The taxpayer, Georgine Iselin, as a stockholder in the producing company, held a license to a designated theater box and sold the license to use her box to forty-seven of the season's seventy performances. Iselin argued that because the tickets she sold did not have an "established price," they were not taxable under the Revenue Act. The Government, by contrast, argued:

> that Congress clearly intended to tax all sales of tickets; that there is in the section no indication of intention to exempt from the tax any sale of tickets or any resale at a profit; that the receipts here taxed are in character substantially similar to those specifically described in paragraph 3; that this general purpose of Congress should be given effect, so as to reach any case within the aim of the legislation; and the act should, therefore, be extended by construction to cover this case.

*Iselin*, 270 U.S. at 250, 46 S.Ct. 248.

The *Iselin* Court rejected the Government's argument, declining to expand the statute's reach. It explained:

> It may be assumed that Congress did not purpose to exempt from taxation this class of tickets. But the act contains no provision referring to tickets of the character here involved; and there is no general provision in the act under which classes of tickets not enumerated are subjected to a tax.

*Id.* Likewise, in this case, the express language of the statute-understood in its ordinary sense-does not include communications which are based only on elapsed time and whether they are interstate, intrastate, or international. Following the Supreme Court's analysis in *Iselin*, we will therefore decline to extend the scope of § 4252(b)(1).

We also note that Congress clearly understood how to draft a more expansive definition if it so chose. For example, in defining "teletypewriter exchange service,"

---

**3.** As the Sixth Circuit noted in *OfficeMax*, however, "[t]here *is* something odd . . . about giving the distance-and-time requirement a disjunctive interpretation." 428 F.3d at 590. It would be strange indeed "to impose a toll charge that varies solely by *distance*, with all calls from, say, Columbus, Ohio to Bozeman, Montana costing the same amount regardless of whether they last 60 seconds, 60 minutes or 60 days." *Id.*

Congress did not limit the tax to services based on the distance-and-time billing method alone. Rather, it imposed a tax on teletypewriter services "whether such charge or charges are determined as a flat periodic amount, on the basis of distance and elapsed transmission time, *or some other manner.*" 26 U.S.C. § 4252(c). Had Congress desired to tax toll telephone services based on a broader variety of billing methods, it could have so indicated.

Reading the statute as a whole, we conclude that "and" is used in its conjunctive sense in § 4252(b)(1). Accordingly, in order to be taxable under that provision, charges for long-distance telephone services must be based on both distance and elapsed transmission time.

### 2. The Effect of Revenue Ruling 79–404

■ The Government also contends that Revenue Ruling 79–404, in which the IRS determined that a ship-to-shore satellite service for which charges were based on the elapsed time of the transmission alone nevertheless satisfied the definition of "toll telephone service," is entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), and *United States v. Mead Corp.*, 533 U.S. 218, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001). It therefore argues that the agency's construction should dictate the outcome of this case. Because we conclude that the language of § 4252(b)(1) is plain, however, and that a conjunctive reading of the word "and" effects the unambiguous intent of Congress, we need not defer to the interpretation in Revenue Ruling 79–404 under *Chevron*, nor consider the appropriate level of deference to be afforded such rulings generally.

In Revenue Ruling 79–404, the IRS acknowledged that "literally, the [ship-to-shore] service provided in this case does not come within the definition of ... 'toll telephone service' ... because the charge for the service does not vary with distance and therefore does not meet the requirement of section 4252(b)(1)." Rev. Rul. 79–404, 1979–2 C.B. 382, 1979 WL 51192. Nevertheless, it concluded:

> The service in this case is essentially "toll telephone service" as described in section 4252(b)(1) of the Code, even though the charge for calls between remote maritime stations and stations in the United States vary with elapsed transmission time only. The toll charges described in section 4252(b)(1), that vary in amount with both distance and elapsed transmission time of the individual communication, reflect Congress' understanding of how the charges for long distance calls were computed at the time the section was enacted. The intent of the statute would be frustrated if a new type of service otherwise within such intent were held to be nontaxable merely because charges for it are determined in a manner which is not within the literal language of the statute.

*Id.* at 383. The Government relies on *Mead*, arguing that although revenue rulings are not subject to notice and comment, they nevertheless should be entitled to *Chevron* deference because Congress intended to grant the IRS the power to make rules with the "force of law" and Revenue Ruling 79–404 "was promulgated in the exercise of that authority." Appellant's Br. at 46 (citing *United States v. Mead Corp.*, 533 U.S. 218, 226–27, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001)).

In *Geisinger Health Plan v. Commissioner*, 985 F.2d 1210, 1216 (3d Cir.1993), this Court explained that although "revenue rulings are entitled to great deference, ... courts may disregard them if they conflict with the statute they purport to

interpret or its legislative history, or if they are otherwise unreasonable." *See also In re Kaplan,* 104 F.3d 589, 599 (3d Cir.1997) (citations omitted). Acknowledging *Geisinger* and *Kaplan,* the Government nevertheless suggests that we should revisit the issue of the proper level of deference to be afforded revenue rulings because *Mead* was decided after those cases. Even assuming that *Chevron* applied to revenue rulings, however, the Government's argument would fail, and therefore, we need not reconsider our decisions regarding the deference owed such rulings. As the Eleventh Circuit explained:

> Under *Chevron,* the court must first determine whether the congressional intent is clear. If the intent is clear, the inquiry ends; the court and agency "must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A., Inc.,* 467 U.S. at 843–44, 104 S.Ct. 2778.
>
> Accordingly, because we hold that § 4252(b)(1) is clear and directly answers the question here, the inquiry ends; we need not give deference to Revenue Ruling 79–404. Moreover, we need not determine the proper level of deference to be given Revenue Ruling 79–404.

*Am. Bankers,* 408 F.3d at 1335 (citations omitted); *see also Amtrak,* 431 F.3d at 379 ("Even if we were to afford *Chevron* deference to the ruling, we could not let stand an agency decision that deviates from the statute's unambiguous meaning."); *Office-Max,* 428 F.3d at 595 ("Even if this circuit gave *Chevron* deference to revenue rulings, which it does not, this revenue ruling would not clear step one of the *Chevron* test") (citations omitted). As discussed above, we conclude that the meaning of the phrase "varies in amount with distance and elapsed transmission time" is clear from the context of § 4252(b)(1) and, therefore,

deference need not be afforded to Revenue Ruling 79–404.

### 3. The Legislative Reenactment Doctrine

■ Even if Revenue Ruling 79–404 is not entitled to deference under *Chevron* and *Mead,* the Government contends that the Ruling is nevertheless entitled to "especially great weight" under the legislative reenactment doctrine, because Congress has reenacted the statute several times since the Revenue Ruling was issued in 1979. Appellant's Br. at 50.

■ Pursuant to the legislative re-enactment doctrine, Congress is "presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Lorillard v. Pons,* 434 U.S. 575, 580, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978) (citations omitted). As the Court recognized in *United States v. Rutherford,* 442 U.S. 544, 554 n. 10, 99 S.Ct. 2470, 61 L.Ed.2d 68 (1979), however, "it may not always be realistic to infer approval of judicial or administrative interpretation from congressional silence alone." Nevertheless, "once an agency's statutory construction has been 'fully brought to the attention of the public and the Congress,' and the latter has not sought to alter that interpretation although it has amended the statute in other respects, then presumably the legislative intent has been correctly discerned." *Id.; see also North Haven Bd. of Educ. v. Bell,* 456 U.S. 512, 535, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982). In this case, the Government points to legislative history in which the Congress seems to equate "toll telephone service" with "long-distance," but fails to identify any evidence that Congress was aware of Revenue Ruling 79–404. We therefore cannot find that the construction has been "fully brought to the

attention" of Congress. Moreover, even if we presume that Congress was aware of Revenue Ruling 79–404, the Supreme Court has held that "where the law is plain, subsequent reenactment does not constitute an adoption of a previous administrative construction." *Brown v. Gardner,* 513 U.S. 115, 121, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994). Given the ordinary meaning of the word "and" and the structure and context of § 4252, we view the law as "plain" and conclude that the legislative re-enactment doctrine does not apply in this case.

### 4. The Meaning of the Word "Distance"

■ Finally, with respect to the application of § 4252(b)(1), the Government argues that because the rates for the Reese Services varied depending on whether the communications were intrastate, interstate, or international, they were in fact based on both "distance and elapsed transmission time." The District Court held that the charges vary by "jurisdictional classification," not distance, and therefore, were not covered by § 4252(b)(1). We agree with the District Court's determination.

According to the Government, "distance" means "the quality or state of being distant or spatially remote," and therefore, a charge need not vary directly with linear distance to meet the definition in § 4252(b)(1). The characterization of a communication as interstate, intrastate, and international does not directly correlate to distance, however, as a call between states, or even countries, may be shorter in distance than a call within the same state. Moreover, as the *American Bankers* court explained, "The jurisdictional boundaries-interstate, intrastate, and international-are divisions of regulatory authority between the Federal Communica-

tions Commission and state regulators." 408 F.3d at 1336. In other words, the different rate structures are not related to how far a call travels, but rather, which governmental body regulates the communication. Accordingly, the charges for the Reese Services-which are based on their characterization as intrastate, interstate, or international-do not vary by distance and, therefore, are not covered by § 4252(b)(1).

### B. "Toll Telephone Services" Under Section 4252(b)(2)

■ Having concluded that the Reese Services are not "toll telephone services" under § 4252(b)(1), we now turn to the Government's alternative argument that they constitute "toll telephone services" under § 4252(b)(2). Section 4252(b)(2) describes such services as those "which entitle[ ] the subscriber upon payment of a periodic charge (determined as a flat amount or upon the basis of total elapsed transmission time), to an unlimited number of telephonic communications to or from all or a substantial portion of the persons having a telephone or radio telephone stations in a specified area which is outside the local telephone system area in which the station provided with this service is located." The Government contends that: (1) there was no contractual limitation on the number of calls Reese Brothers could make and, therefore, they were entitled to an "unlimited number" of calls; (2) Reese Brothers received a monthly bill and, hence, they were subject to a "periodic charge"; and (3) the monthly bill was based upon a "total elapsed transmission time"; and (4) although it was large-essentially, anywhere outside the local calling region-Reese Brothers were permitted to make calls to a "specified area."

Given the context of the provision, the Government's reading is an implausible

one. First, the Carriers charged Reese Brothers on a per call basis. Although it was not restricted in the number of calls it could make, Reese Brothers was not, under any reasonable interpretation of the phrase, entitled to "unlimited" calls "upon payment of a periodic charge." *See Office-Max*, 428 F.3d at 599. Second, the bill that Reese Brothers received was not based on the "total elapsed transmission time," but rather the sum of the charges for each individual call, which vary by both the elapsed transmission time and the character of the call (i.e., interstate, intrastate, or international). For purposes of calculating the total amount of Reese Brothers' monthly bill, the Carriers added the toll charges for each individual call and rounded up to the next highest billing increment. The bill was based on the sum of the individual calls, not the "total elapsed transmission time." As the *Office-Max* Court explained, "[t]he end result is not a "periodic charge" based on total elapsed time (or even total elapsed time *itself* rounded up to the next billing increment), but rather a monthly bill based on the summation of toll charges for individual communications." *Id.* Finally, the Government's argument that "specified area" means any location outside of the local calling area strains credulity. As the other circuits have pointed out, § 4252(c) is reflective of AT & T's WATS service, which permitted a customer to make calls to or receive calls from one of AT & T's six U.S. service areas. *See id.; see also Am. Bankers*, 408 F.3d at 1337 ("Section 4252(b)(2) applies to WATS service...."). With that in mind, it is unreasonable to equate "specified" with "anything but local."

We agree with Reese Brothers' contention that section 4252(b)(2) describes a toll service for which the customer pays either a fixed dollar amount per month for an unlimited number of calls, or a fixed dollar amount per month for a fixed number of minutes or hours of use without regard to the number of calls placed. Under this view, the Reese Services do not meet the definition set forth in § 4252(b)(2).

## C. "Local Telephone Services Under Section 4252(a)"

▉ Finally, the Government urges this Court to conclude that the Reese Services are "local telephone services" under the definition provided in § 4252(a). That section defines the phrase to mean:

(1) the access to a local telephone system, and the privilege of telephonic quality with substantially all persons having telephone or radio telephone stations constituting a part of such local telephone system, and

(2) any facility or service provided in connection with a service described in paragraph (1). The term "local telephone service" does not include any service which is a "toll telephone service" or a "private communication service" as defined in subsection (b) and (d).

26 U.S.C. § 4252(a). The Government contends that Congress intended to tax all telephone services other than private communications services, and as such, if the Reese Services are not considered "toll telephone services," they must, by default, be considered "local telephone services." The "local telephone service" designation, in other words, is a residual category, intended to capture all telephonic communications that are not "toll telephone services" or "private communications services."

Local networks are indeed used to some extent to carry long-distance call traffic and, in connection with its long-distance services, Reese Brothers had "access" to various local telephone services. However, as the Sixth Circuit pointed out, "the defi-

nition of local-telephone service requires 'access to a' local telephone system, not 'access to every' local telephone system included within the boundaries of a long-distance plan." *OfficeMax,* 428 F.3d at 600. The Court concluded: "Not surprisingly, given its application to 'local' telephone service, the definition contemplates a service with limited geographic reach, not a plan that makes use of an untold number of local services." *Id.* We agree.

We note also that, rather than creating a residual category, the final sentence in § 4252(a)(2) is more appropriately viewed as an effort to avoid double taxation of communications that are taxed under a different provision.[4] Once again, the Government is arguing that because Congress intended to tax all types of telephonic communications to be taxed, Reese Services must fit within one of the definitions in § 4252. Our reading of *Iselin* suggests that the opposite is true: we should not enlarge the statute by including within its scope that which was omitted. *Iselin,* 270 U.S. at 251, 46 S.Ct. 248. Accordingly, we conclude that the Reese Services are not "local telephone services" as defined by § 4252(a).

## IV. Conclusion

Based upon the plain language and structure of §§ 4251 and 4252, we conclude that the federal communications excise tax does not apply to long-distance telephone services that are priced based on a fixed per-minute, non-distance-sensitive rate. The Government would have us extend the reach of the federal communications excise tax beyond its text. Following the Su-

preme Court's analysis in *Iselin,* and that of our sister circuits in *Fortis, OfficeMax, American Bankers,* and *Amtrak,* we decline to do so. We will therefore AFFIRM the judgment of the District Court.

---

4. Specifically, insofar as a communication fits the definition of a "toll telephone service" under § 4252(b) or a private communication service under § 4252(d), but would also otherwise fit the definition of a "local telephone service" under § 4252(a), it could have been

taxed twice. The sentence removes from the definition of "local telephone service" anything that fits the definition of § 4252(b) or § 4252(d).